

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROYAL TOWING, INC., an Illinois       )
corporation, RICK GRAVES and          )
CHRISTINE GRAVES,                      )
                                       )
            Plaintiffs,                )
                                       )
      vs.                              )       No. 03 C 4925
                                       )
CITY OF HARVEY, a municipal            )
corporation, et al.,                   )
                                       )
            Defendants.                )

## MEMORANDUM OPINION AND ORDER

In their original complaint, plaintiffs Royal Towing, Inc. (Royal), Rick Graves and

Christine Graves brought two counts pursuant to 42 U.S.C. § 1983 against the City of Harvey,

Illinois; its mayor Eric Kellogg; various City aldermen and the City's corporation counsel.

They alleged that defendants stopped using Royal's services for the City of Harvey and

terminated the company's land lease with the city because its owners, the Graves, supported

the mayor's opponent – Rick Graves' father – in an election race. In addition, plaintiffs

brought breach of contract and unjust enrichment claims, and sought injunctive relief. After

the court denied a temporary retraining order and a preliminary injunction, and dismissed

plaintiffs' § 1983 claim based on the termination of Royal's lease, *see* Royal Towing, Inc. v.

City of Harvey, 2004 WL 626137 at *1 (N.D.Ill. 2004), Rick Graves (plaintiff) amended the

complaint, adding a sixth count for review of the Harvey Police Pension Board's termination

of his disability benefits. This new count added the Pension Board and its members as

defendants. We denied defendants' motion to dismiss this count. Royal Towing, Inc. v. City

of Harvey, 350 F.Supp.2d 750 (N.D.Ill. 2004). Plaintiff now moves for summary judgment on count VI and defendants have filed a cross-motion. During the briefing period for the parties' summary judgement motions, they also filed two other motions relevant to the court's consideration of the issues: defendants' motion to strike portions of plaintiff's statement of undisputed material facts, and plaintiff's motion to supplement the administrative record. Defendants have filed two motions to dismiss as well, one to dismiss Police Chief Andrew Joshua from the action and another to dismiss all Pension Board members in their individual capacities.

## BACKGROUND

The following is taken from the parties' statements of undisputed material facts. In March 1992, plaintiff, a Harvey police officer, was in an off-duty car accident that resulted in the fracture of his spine. Plaintiff underwent surgery, and for eight months afterwards wore a neck brace. In May 1992, he applied to the Harvey Police Pension Board for a disability pension. Pursuant to 40 ILCS 5/3-115, plaintiff filed signed statements from three doctors attesting that plaintiff was disabled and unable to perform his regular duties as an officer. Dr. Chavez, the neurosurgeon who performed surgery on plaintiff's broken spine; Dr. Prospero, plaintiff's physician; and Dr. Woods, who also examined plaintiff, all concluded that plaintiff was disabled. On June 3, 1992, the Pension Board granted him a disability pension.

Plaintiff's disability did not preclude him from employment. After receiving his disability pension, he worked as a maintenance man, a truck driver, and a carpenter. On May 19, 1995, while on a carpentry job, plaintiff suffered an injury to his left hand from a power saw. The saw amputated his little finger and severely injured the knuckle of his ring finger. As a result of this injury he underwent therapy and rehabilitation for two and-a-half years,

during which time he remained unemployed. Following his rehabilitation, plaintiff held jobs as an armed and unarmed security guard, and a tow truck driver.

In September 2002, the Pension Board required that plaintiff undergo a medical examination to determine his continued eligibility for his disability pension. At the Board's request, Dr. Terrence Moisan examined plaintiff and prepared a report on his findings. Dr. Moisan stated that plaintiff had "a slightly increased risk in more injury due to the slight instability if the neck is overly stressed." Dr. Moisan explained that this risk could arise during an altercation and that plaintiff was not willing to accept such risk. Though plaintiff "could do 99% of [an officer's] duties," Dr. Moisan concluded that because of the increased medical risks, "Officer Graves is considered permanently impaired for unrestricted police officer duties." After Dr. Moisan submitted his report, plaintiff continued receiving his disability pension.

In January 2004, the Pension Board again requested that plaintiff undergo a medical examination to determine his continued eligibility for his disability pension. This time the Board sent him to Dr. Charles Mercier, not to Dr. Moisan. In his report, Dr. Mercier summarizes plaintiff's medical history, including his two serious accidental injuries. In recounting his examination of plaintiff, Dr. Mercier states that "Today, except for some slight subjective pain over the left trapezius muscle and a well-healed surgical scar, his neck examination is normal without muscle spasms. He is neurologically intact." According to Dr. Mercier, plaintiff's X-rays showed no instability in his spine, which appeared to be further stabilized by the bones' autofusion. The doctor concluded that plaintiff could perform the unrestricted duties of a police officer, that he was not under an increased risk of injury, and he did not require any additional medical care.

The Pension Board informed plaintiff of Dr. Mercier's conclusion and scheduled a hearing on the matter. Plaintiff moved for a continuance of the hearing so that he could schedule examinations with other doctors, and the Board granted it. At the hearing on April 5, 2004, plaintiff submitted recent reports from Dr. Moisan, Dr. Chavez, Dr. Prospero, and Dr. Martin Luken, all of whom concluded that, due to his disability, plaintiff was unable to perform unrestricted police work. Dr. Luken, the only doctor of the four who had not previously treated plaintiff, and had not offered a prior opinion on his disability to the Board, examined plaintiff on the recommendation of his primary care physician, Dr. Prospero. As part of the examination he reviewed plaintiff's February 9, 2004, MRI scan of his cervical spine, which revealed "diffuse modest degenerative changes, with a bit of anterolisthesis of C4-C-5." He concluded that plaintiff "is completely and permanently disabled from the standpoint of unrestricted police work," though he allowed that plaintiff could perform a "more sedentary occupation." Dr. Mercier's report was also entered into the record. In addition, plaintiff testified at the hearing.

In a letter dated April 13, 2004, the Pension Board informed plaintiff that it found he was no longer disabled and was "capable of returning to full and unrestricted police duty as of April 6, 2004," and that, therefore, his disability benefits would terminate. In explanation of its ruling, the Board stated that the finding was "[b]ased upon the detailed and credible evidence contained in the Administrative Record." Plaintiff appealed the Board's decision within 35 days by adding count VI to his complaint.

<u>DISCUSSION</u>

First we address defendants' motions to dismiss. Plaintiffs do not dispute defendants' contention that Police Chief Andrew Joshua is not a member of the Harvey Police Pension

Board, and therefore do not object to his dismissal from count VI. Defendants also seek to dismiss the members of the Pension Board in their individual capacities. Plaintiff listed Pension Board members as defendants pursuant to 735 ILCS 5/3-107, which states, in part, that "in any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants." In <u>Lockett v. Chicago Police Board</u>, 133 Ill.2d 349, 549 N.E.2d 1266 (Ill. 1990), the Illinois Supreme Court held that courts lacked jurisdiction to review administrative decisions where the plaintiff failed to name parties of record as defendants. However, the Illinois legislature amended the statute, effective in 1997, to state that courts shall not dismiss administrative review actions for lack of jurisdiction due to plaintiff's failure to name a member of a board as a defendant, where the board has been named. 735 ILCS 5/3-107(a); <u>Fragakis v. Police and Fire Commission of Village of Schiller Park</u>, 303 Ill.App.3d 141, 707 N.E.2d 660 (1st Dist. 1999). Nonetheless, the plain language of the statute still requires a plaintiff to name the parties of record to an administrative proceeding as defendants.

Despite this statute and the fact that the named Board members were parties of record to plaintiff's hearing, defendants argue that the Board members, in their individual capacities, are not proper defendants. Though the complaint lists the Board members individually, in accord with 735 ILCS 5/3-107(a), this does not mean that they are named in their individual capacities. The complaint does not explicitly indicate whether plaintiff brought count VI against the Board members in their individual or official capacities, and the parties do not appear to distinguish between listing the Board members individually, and suing them in their individual capacities. Both the language of section 3-107(a) and the relief requested in

plaintiff's amended complaint reveal that the Board members are listed as defendants in their official capacities. Section 3-107(a) repeatedly refers to listing an individual "in his or her official capacity." Thus, even though the statute requires that the board members be named individually, they are being sued in their official capacities. This is further evidenced by the fact that plaintiff's request for relief in count VI does not seek any damages against the Board members individually, but rather seeks a reversal of their collective decision as the Pension Board. The motion to dismiss the individually listed Pension Board members is denied, though we clarify that they are being sued in their official capacities, not their individual capacities.

Next, we address defendants' motion to strike and plaintiff's motion to supplement the record. The parties disagree on the appropriate scope of our review. In count VI plaintiff alleges that Mayor Kellogg's appointment of Deputy Police Chief Christopher Barton, and the mayor's brother Derrick Mohammed, to the Pension Board, calls into question the Board's independence and fairness. In his reply brief, plaintiff highlights Barton's alleged bias against him, which plaintiff argues was evidenced in conversations that Barton had with others prior to plaintiff's hearing before the Pension Board. Plaintiff seeks to supplement the administrative record of his hearing with the affidavits of two individuals who claim that Barton told them "he was going to keep 'f___ing' Rick Graves" and was going "to make Rick broke forever." Defendants oppose the motion to supplement the record with these affidavits, and further seek to strike portions of plaintiff's statement of material facts, which are not supported by the administrative record.

Illinois statute dictates the scope of a court's review of a final administrative decision. 735 ILCS 5/3-110 states, in part, that the review "shall extend to all questions of law and fact presented by the entire record before the court. No new or additional evidence in support of

or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court." Defendants argue that plaintiff's allegations and affidavits concerning the Pension Board's bias constitutes new evidence because this issue was not raised and no evidence was presented at plaintiff's hearing before the Board. Generally, a failure to object at the original hearing waives the right to raise the issue on appeal. *See* A.R.F. Landfill, Inc. v. Pollution Control Board, 174 Ill.App.3d 82, 88, 528 N.E.2d 390, 394 (2d Dist. 1988). A party must raise a claim of bias by the administrative agency soon after learning of it "because it would be improper to allow a party to withhold a claim of bias until it obtained an unfavorable ruling." *Id.* (citing E & E Hauling, Inc. v. Pollution Control Board, 107 Ill.2d 33, 38-39, 481 N.E.2d 664, 666 (1985)). A court may make an exception and consider a question of law not presented to the administrative agency if an injustice might otherwise occur. A.R.F. Landfill, 174 Ill.App.3d at 88, 528 N.E.2d at 394 (citing Wadlington v. Mindes, 45 Ill.2d 447, 453, 259 N.E.2d 257, 261 (Ill. 1970)). Plaintiff argues that an injustice would occur in this case because he was not aware of Barton's statements at the time of the hearing, and therefore could not have presented this evidence to the Board. In his affidavit attached to his motion to supplement, plaintiff avers that he learned of the statements approximately two months after receiving his notice of termination of his disability benefits.

Despite his current argument, plaintiff's original allegations of the Pension Board's bias did not depend on Barton's alleged statements. Both plaintiff's amended complaint (filed before plaintiff learned of Barton's alleged statements), and his memorandum in support of his motion for summary judgment (filed after he learned of the statements), assert that the Board was biased, but neither mentions statements by Barton. They allege that the Board was unable to make an objective determination because two of its members had been appointed

by Mayor Kellogg, against whom plaintiff had an ongoing civil rights action. One of the mayor's appointees was his brother, and plaintiff inaccurately believed that the other was the mayor's campaign manager. Plaintiff had this information at the time of his hearing, yet he did not raise this issue or object during the proceedings. Rather, he waited to raise this issue until after he received an unfavorable decision from the Board. We deny plaintiff's motion to supplement the record and grant defendants' motion to strike.

We turn now to the parties' summary judgment motions. Both plaintiff and defendants seek summary judgment on plaintiff's claim for administrative review of the Pension Board's decision. Under the Illinois Administrative Review Act a reviewing court may only reverse an agency's factual findings if they are against the manifest weight of the evidence on record. International College of Surgeons v. City of Chicago, 153 F.3d 356, 364-65 (7th Cir. 1998); Abrahamson v. Illinois Department of Professional Regulation, 153 Ill.2d 76, 88, 606 N.E.2d 1111, 1117 (Ill. 1992). The reviewing court may not reverse a board's finding simply because the opposite conclusion is reasonable, given the record. Abrahamson, 153 Ill.2d at 88, 606 N.E.2d at 1117. A board's factual findings are against the manifest weight of the evidence "only where all reasonable and unbiased persons would agree it is clearly evident the [board] erred and should have reached the opposite conclusion." Board of Education of Round Lake Area Schools v. State Board of Education, 292 Ill.App.3d 101, 109, 685 N.E.2d 412, 417 (2d Dist. 1997)(citing La Salle Partners, Inc. v. Illinois Property Tax Appeal Board, 269 Ill.App.3d 621, 632, 646 N.E.2d 935, 942 (2d Dist. 1995)). Though reviewing courts give boards and agencies "the benefit of the doubt," the manifest weight standard is not "a mere stamp of approval for agency decisions." Coyne v. Milan Police Pension Board, 347 Ill.App.3d 713, 724, 807 N.E.2d 1276, 1285 (3d Dist. 2004).

The Pension Board's decision concerning plaintiff's disability states only that "[b]ased upon the detailed and credible evidence contained in the Administrative Record, the Pension Board has found that you are no longer disabled and capable of returning to full and unrestricted police duty as of April 6, 2004. Accordingly the Pension Board has unanimously voted to terminate your benefits effective that date." Though the Pension Board asserts that its decision is based on the detailed and credible evidence in the record, it is clear that it does not find the majority of the evidence in the record to be credible. Of the five medical opinions in the record, four of them find plaintiff to be unable to perform unrestricted police work. Plaintiff, the only individual who testified at the hearing, also stated that he suffers from tremors in his left shoulder, experiences pain in his neck and left hand, and risks more serious injury to his neck if involved in an altercation, all of which preclude him from unrestricted police work. If the Board found this evidence to be credible, it is difficult to understand how it reached its decision, in light of the fact that only one doctor's opinion contradicted this evidence. Rather, it appears that the Board found Dr. Mercier's report and conclusion to be the only credible evidence in the record, or at least more credible than the other evidence.

Defendants argue that the Board's finding should be affirmed because Illinois law requires only one supporting medical evaluation to terminate a disability pension. Defendants cite 40 ILCS 5/3-116, which allows a pension board to summon an officer on disability to undergo an examination to determine fitness for duty. "If a police officer retired for disability ... is found upon medical examination to have recovered from disability, the board shall certify to the chief of police that the member is no longer disabled and is able to resume the duties of his or her position." 40 ILCS 5/3-116. While the statute does not require more than one medical examination to conclude that an officer is no longer disabled, it does not follow that one medical

examination will always suffice to justify the board's decision. The reviewing court must still determine whether the board's decision, whether in reliance on one medical opinion or not, is against the manifest weight of the evidence. In <u>Trettenero v. Police Pension Fund of City of Aurora</u>, 333 Ill.App.3d 792, 800-01, 776 N.E.2d 840, 848-49 (2d Dist. 2002), the court rejected the plaintiff's argument that requiring only one medical opinion in support of the termination of her disability benefits violated her due process and equal protection rights. Nonetheless, the court went on to consider her argument that the board's finding was against the manifest weight of the evidence – an argument it rejected on the basis that there was sufficient evidence to support the board's decision. 333 Ill.App.3d at 802, 776 N.E.2d at 849. Thus, one medical report concluding that an officer is not disabled does not automatically immunize a board's finding from a reviewing court's determination that it is against the manifest weight of the evidence.

Defendants maintain that the Pension Board justifiably gave more credence to Dr. Mercier's report than to the reports of Drs. Luken, Chavez, Prospero and Moisan. They argue that Dr. Mercier's report, unlike the others, relied on the analysis of current X-rays of the cervical spine. Defendants point out that both Dr. Luken and Dr. Chavez recommended the type of X-rays that Dr. Mercier took and analyzed in preparation for his diagnosis. These X-rays, defendants argue, provide the Pension Board with a rational basis to accord more weight to Dr. Mercier's report. However, defendants overlook other tests that Dr. Luken and Dr. Moisan did analyze. Dr. Luken's report includes a discussion of a Magnetic Resonance Imaging (MRI) scan of plaintiff's cervical spine taken on February 9, 2004 – even more recently than Dr. Mercier's X-rays. Dr. Luken states that the MRI scan demonstrates "modest degenerative changes, with a bit of anterolishtesis of C4-C5." In preparing his report, Dr. Moisan also reviewed this MRI,

as well as an electromyography (EMG) report prepared on March 9, 2004. Dr. Moisan concluded that the results of the EMG corresponded with plaintiff's complaints of pain in the "left C6 distribution." Given Dr. Moisan's review of the MRI scan from February 9, 2004, and the EMG report from March 9, 2004, defendants' effort to discount his report because it "does not include any examination of recent x-rays or studies," falls flat.

More importantly, regardless of the justifications presented in defendants' briefs, we cannot discern from *the record* why the Board disregarded the bulk of the evidence presented at the hearing and rested instead on Dr. Mercier's opinion. An Illinois appellate court faced a similar situation in Coyne, where five of six doctors who had examined a police officer concluded that he was disabled and could not perform his duties. 347 Ill.App.3d at 723; 807 N.E.2d at 1284. Nonetheless, the police Pension Board relied on the opinion of the one doctor who concluded that the officer was not disabled, and denied him a disability pension. *Id.* The board offered no explanation for why it placed greater weight on one doctor's evaluation over the other five. *Id.* The court allowed that an agency may make a credibility determination between doctors with competing opinions, but explained that "when the evidence weighs heavily against a single doctor, and the agency chooses to adopt that doctor's opinion, the agency must articulate the findings underlying its choice to facilitate meaningful review." 347 Ill.App.3d at 724, 807 N.E.2d at 1285. The court remanded the case to the board for further proceedings. Likewise, without any explanation for the Board's decision in this case, we cannot determine whether the reasonable conclusion is that the Board erred by disregarding the majority medical opinion in favor of Dr. Mercier's. Both plaintiff's and defendants' motions for summary judgment on count VI are denied, and we remand the issue to the Harvey Police Pension Board for further proceedings on the review of plaintiff's disability status.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss defendant Andrew Joshua is granted; however, their motion to dismiss the individually named Pension Board members is denied. Defendants' motion to strike portions of plaintiff's statement of facts is granted, and plaintiff's motion to supplement the Administrative Record is denied. Both parties' motions for summary judgment on count VI are denied and the issue is remanded to the Pension Board for further proceedings.

James B. Moran
**JAMES B. MORAN**
Senior Judge, U. S. District Court

June 24 , 2005.